# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAMELA CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-07985 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| SMG CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Clark has brought this lawsuit against her former employer, Defendant SMG Corporation ("SMG"), alleging that SMG subjected her to discrimination on the basis of her disability, age, and race, retaliated against her when she complained about it, and failed to accommodate her disability. Clark also alleges that her employer retaliated against her for taking leave from work due to her health issues and to care for her father. Now before this Court are SMG's motion to dismiss Clark's amended complaint (Dkt. No. 19) and Clark's motion for leave to file a second amended complaint (Dkt. No. 38). For the reasons stated below, SMG's motion is granted in part and denied in part. Clark's motion is granted.

## BACKGROUND

The following facts alleged in Clark's amended complaint are accepted as true for the purpose of SMG's motion to dismiss.

Clark began working for Navy Pier in 1997, and Navy Pier came under SMG management in 2012. (Am. Compl. ¶ 13, Dkt. No. 17.) She always performed her work satisfactorily. (*Id.*

¶ 15.) In 1999, she became an event manager. (*Id.* ¶ 14.) On June 10, 2015,[1] Clark went to Regional General Manager Kelvin Moore to discuss her stress and workload and to make suggestions as to how SMG could help her. (*Id.* ¶ 17.) But Moore declined to do so. (*Id.*)

Due to a personal health condition, panic attacks, depression, and anxiety, Clark took leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, from June 15, 2015 to August 3, 2015. (*Id.* ¶¶ 16, 18.) Upon her return, Clark thought she would pick up where she left off but instead she encountered various difficulties. For example, she was not given any work assignments at all initially. (*Id.* ¶ 22.) Then, her part in an important event was diminished. (*Id.* ¶ 23.) And her role as a mentor abruptly ended, as her junior co-worker was told not to go to her for help. (*Id.* ¶ 24.) When Clark raised concerns about her role with SMG's Director of Event Management Jason Wiatrak, she was repeatedly put off. (*Id.* ¶ 23.) Believing that she was being singled out, Clark asked to speak to Moore, who told her that Wiatrak thought Clark was defiant. (*Id.* ¶ 25.) Shortly thereafter, Clark was given various tasks, such as calling companies to compare items' costs and finding electrical locations in the building for vendors—tasks not normally done by an event manager like Clark. (*Id.* ¶ 26.)

On August 11, 2015, Clark met with Wiatrak and Moore to discuss work expectations and changes purportedly made while Clark was out on FMLA leave. (*Id.* ¶ 27.) No one else had been required to participate in such a meeting before. (*Id.*) During the meeting, instead of discussing work expectations and changes, Wiatrak and Moore brought up issues with Clark's billing from March 2015 (even though Clark worked for a different supervisor and Wiatrak did not even work for Navy Pier back then), as well as Clark's tardiness in May 2015 (even though Clark had not actually been late). (*Id.*) When Clark was asked about her expectations regarding work

---

[1] Clark's amended complaint states that she spoke with Moore on June 10, 2016. But it is clear from the surrounding allegations that this is a typo and she intended to allege that the conversation took place in 2015.

assignments upon her return to work, she said that she expected to jump right in. (*Id.*) Moore then suggested that Clark go talk to her co-workers to get a sense of how they felt about her, her FMLA leave, and her return to work. (*Id.*)

On September 28, 2015, Clark was given verbal warnings for six instances of absenteeism and tardiness, even though management knew of Clark's continuing health problems and her efforts to get approval for intermittent FMLA leave. (*Id.* ¶ 28.) When Clark was approved for intermittent leave from October 1, 2015 to April 1, 2016, the verbal warnings were not retracted and still considered for further discipline. (*Id.*) Yet when other employees (who were white and under 40 years old, and who had not taken leave) were late or left early, they were not disciplined. (*Id.*) The issues with Clark's uneven workload also continued. For example, assignments were transferred to Clark from her co-worker Lyndsey Van Wyk (who was white and under 40 years old, and had never taken FMLA leave), even though Van Wyk had no conflicting events and Clark had a larger than average workload. (*Id.* ¶¶ 24, 32, 34.)

Clark was approved for another FMLA leave to care for her father from October 21, 2015 to November 3, 2015. (*Id.* ¶ 35.) When she returned to work, she was suspended for working on her secondary employment using SMG's computers during work hours, even though she had filled out the necessary forms for her secondary employment. (*Id.* ¶¶ 36, 39.) Once she returned from her suspension, Clark was given a written reprimand by Moore and Butera.[2] (*Id.* ¶ 38.) She was told to fill out the forms concerning her secondary employment again and that once she did so her request would be denied. (*Id.* ¶ 39.) Clark was not allowed to take a copy of the reprimand to review with her attorney. (*Id.* ¶ 38.) And even though she was initially promised she could talk to her attorney before signing the reprimand, the promise was retracted shortly thereafter and Clark

---

[2] In her complaint, Clark does not provide Butera's first name or explain Butera's role at SMG. But in her response to SMG's motion to dismiss, Clark states that Butera worked in human resources. (*See* Pl.'s Resp. at 6, Dkt. No. 25.)

was instructed to respond to the reprimand herself by the end of the day or be considered to have "resigned" from her position. (*Id.* ¶ 40.) Other SMG employees, who were white and under the age of 40, and who had not taken FMLA leave, were allowed to pursue secondary employment opportunities with no issues. (*Id.* ¶ 43.)

In December 2015, a senior event manager position opened at SMG. (*Id.* ¶ 44.) The first time Clark saw the posting for the position was the day before the position closed. (*Id.*) In the past, open positions were discussed in staff meetings and email updates were sent regarding hiring processes. (*Id.*) But those procedures were not followed for the senior event manager position and the job listing was posted in a very obscure area. (*Id.*) One of Clark's co-workers told her that the position was created for Van Wyk, who ultimately got the job. (*Id.*) Clark had significantly more experience and was more qualified for the position than Van Wyk. (*Id.*)

In January 2016, Clark's workload issues returned. (*See id.* ¶ 45.) Wiatrak scheduled Clark for overlapping events, back-to-back events, and all holiday events, even when other event managers were available. (*Id.*) Clark talked to Wiatrak about her workload, but he did not alter the schedule. (*Id.*) The same month, Clark got a negative performance review despite her work product being satisfactory or better. (*Id.* ¶ 46.) When other event managers were unavailable, events would be reassigned to Clark and another African-American co-worker. (*Id.* ¶¶ 49–51.) There were also differences in who got the lead assignments—Wiatrak assigned people less senior than Clark to lead an important event; he also put three African-American employees in "assistant" positions for that event. (*Id.* ¶ 47.)

Wiatrak also started documenting small work incidents involving Clark and sending emails threatening corrective action. (*Id.* ¶¶ 48, 52.) In contrast, when Van Wyk had major billing issues, she was not disciplined or threatened with corrective action. (*Id.* ¶ 52.)

4

In October 2015, Clark complained about race, age, and disability discrimination internally within SMG. (*Id.* ¶¶ 85, 90, 95.) She also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 24, 2016. (*Id.* ¶¶ 85, 90, 95.) In the present lawsuit, Clark now brings claims for retaliation in violation of the FMLA (Count I); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count II); failure to accommodate her disability and disparate treatment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count III); race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count IV); and retaliation for complaining about race, age, and disability discrimination (Counts V, VI, and VII).

**DISCUSSION**

SMG asks this Court to dismiss Clark's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations that are merely consistent with a defendant's liability, conclusory statements, and formulaic recitations of the elements of a cause of action are, by themselves, insufficient. *Iqbal*, 556 U.S. at 678. In analyzing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts as true and draw all inferences in favor of the plaintiff. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

## I. Retaliation Claim under the FMLA (Count I)

The FMLA allows an eligible employee to take leave due to a serious medical condition or to care for a family member with such condition. 29 U.S.C. § 2612(a)(1). The FMLA further prohibits employers from retaliating against an employee who exercises or attempts to exercise rights protected by the statute. *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012) (citing 29 U.S.C. § 2615(a)(2)). Hence, employers cannot consider an employee's FMLA leave as a negative factor in promotion, termination, and other employment decisions. *Id.* To plead an FMLA retaliation claim, a plaintiff must allege that: (1) she engaged in a statutorily-protected activity; (2) her employer took a materially-adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. *Gallagher v. Dart*, No. 17-CV-08028, 2018 WL 1635852, at *3 (N.D. Ill. Apr. 5, 2018); *see also Guzman v. Brown Cty.*, 884 F.3d 633, 640 (7th Cir. 2018).

SMG argues that Clark's FMLA-retaliation claim must be dismissed because she has insufficiently pleaded an adverse employment action and a causal connection between any such action and a protected activity. To be materially adverse, an action must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013). For example, a materially-adverse action might be "indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Failing to promote an employee is a materially-adverse employment action; the same is true for a demotion. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014). A transfer to a position with the same pay and benefits, but that effectively amounts to a demotion or reduced opportunities for promotion, also qualifies

as a materially-adverse employment action. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008). Regarding the causal-connection element, courts must look at the events as a whole. *See King v. Ford Motor Co.*, 872 F.3d 833, 842 (7th Cir. 2017). The casual connection may present itself in the form of a direct statement from the employer, suspicious timing, ambiguous statements from which retaliatory intent can be inferred, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the adverse actions. *See Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014).

In the present case, Clark alleges that SMG diminished her material work responsibilities when she returned from her first FMLA leave. Initially, she was not given any work at all. Then, her role in an important event was reduced, and she was given various chores that were not normally done by event managers. Her mentoring role was also taken away from her. And when she asked about her changed situation, an SMG manger advised her to talk to her co-workers to see how they felt about her FMLA leave and return to work. Clark also alleges that when she returned from her second FMLA leave, she was reprimanded and suspended for doing secondary employment, even though she filled out the necessary forms for such employment. SMG management tried to use the reprimand to force Clark to resign and impeded her consultation with an attorney regarding the reprimand, while other SMG employees (who did not take FMLA leave) engaged in secondary employment activities without any issues. Moreover, about a month after Clark's return from FMLA leave, SMG promoted her less qualified co-worker (who had not taken FMLA leave) by creating a senior event manager position and effectively blocking Clark from applying for it. These allegations are sufficient to support a reasonable inference that Clark suffered adverse employment actions.

Regarding the causal-connection element, the timing of SMG's actions is suspicious. SMG management also implied that the actions were linked to Clark's FMLA leave, as they told her to talk to her co-workers about her taking leave. Furthermore, Clark's co-workers who did not take FMLA leaves were treated differently. Thus, Clark has alleged enough to link the adverse actions against her to her FMLA leaves. Therefore, Clark's FMLA-retaliation claim survives.

## II. Retaliation Claims under Title VII, the ADEA, and the ADA (Counts V–VII)

Clark also brings retaliation claims under Title VII, the ADEA, and the ADA. To plead such claims, a plaintiff must allege that she engaged in a statutorily-protected activity and was subjected to an adverse employment action as a result. *See, e.g., Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015). In the context of a retaliation claim, adverse employment action means an employer's action that would dissuade a reasonable employee from participating in a protected activity. *Id.* To allege sufficiently that protected activity caused an adverse employment action, a plaintiff must do more than simply allege that the protected activity preceded the adverse action. *See Lee v. Chi. Transit Auth.*, No. 12-CV-09180, 2015 WL 1868121, at *4 (N.D. Ill. Apr. 22, 2015); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). A plaintiff must somehow tie the adverse action to her protected activity. *See Sauzek*, 202 F.3d at 918.

SMG argues that Clark has failed to allege the protected activity, adverse employment action, and casual nexus elements of her retaliation claims. In particular, SMG argues that Clark's filing of an EEOC complaint is irrelevant because she does not claim that any allegedly adverse actions taken against her were committed by people who were aware of the complaint. SMG further insists that Clark's allegation that she complained about discrimination internally within SMG does not help her either, because she has failed to provide any details as to how or to whom

she complained about the discrimination and whether her managers were aware of such internal complaint.

In her complaint before this Court, Clark only alleges that she complained about race, age, and disability discrimination "internally in October 2015 and in her EEOC complaint filed on or about March 24, 2016."[3] (Am. Compl. ¶¶ 85, 90, 95.) While Clark alleges that certain retaliatory actions took place after those complaints, she simply does not allege enough to tie those actions to her internal complaints. It is unclear from her allegations what her internal complaints entailed and whether anyone who engaged in the retaliatory conduct even knew about them. As a result, Clark's retaliations claims must be dismissed. *See Tarpley v. City Colleges of Chi.*, 87 F. Supp. 3d 908, 913–14 (N.D. Ill. 2015) (dismissing Title VII retaliation claim due to the lack of allegations that plaintiff's employer knew of her protected activity); *see also Prince v. Ill. Dep't of Revenue*, 73 F. Supp. 3d 889, 894 (N.D. Ill. 2010) (dismissing ADA retaliation claim for similar reasons).

However, in her response to SMG's motion to dismiss, Clark further explains that her October 2015 complaint was a letter from her attorney addressed to Moore and Butera. And, as discussed above, Clark alleges enough adverse actions by SMG that occurred shortly after her internal complaint. Thus, she will be given an opportunity to amend her complaint to address the deficiencies with her retaliation claims.

### III.     Discrimination Claims under the ADEA and Title VII (Counts II and IV)

The Court next turns to Clark's discrimination claims under the ADEA and Title VII. The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment,

---

[3] In her response to SMG's motion to dismiss, Clark also states that she "complained about her treatment internally in a letter by her attorney in October 2015 (which was addressed to her manager Mr. Moore and to Human Resources, Ms. Butera)" and "[s]he then filed an EEOC complaint in March 2016." (Pl.'s Resp. at 6, Dkt. No. 25.) But these allegations are not present in her complaint.

because of such individual's age." 29 U.S.C. § 623 (a)(1). Title VII prohibits discrimination against an employee on the basis of race. *See* 42 U.S.C. § 2000e–2(a). A plaintiff states a claim for employment discrimination when she alleges that an employer took an adverse action against her because of a prohibited animus. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). In the ADEA context, a plaintiff must allege that she is over 40 years old and the employer took a specified adverse employment action against her because of her age. *See Mounts v. United Parcel Serv. of Am., Inc.*, No. 09C1637, 2009 WL 2778004, at *5 (N.D. Ill. Aug. 31, 2009); *see also Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). Similarly, a complaint alleging race discrimination under Title VII needs to aver only that the employer took a specified adverse employment action on the basis of the plaintiff's race. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013).

SMG argues that Clark's discrimination claims under the ADEA and Title VII should be dismissed because Clark fails to allege a materially adverse employment action or a causal link between such action and her age or race. In the context of ADEA and Title VII claims, a materially adverse employment action must be something more than a minor or trivial inconvenience. For example, a materially adverse employment action exists when the plaintiff's pay or benefits are decreased, when her job is changed in a way that significantly reduces career prospects, or when job conditions are changed in a way that significantly changes her work environment in an unfavorable way. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 743–44 (7th Cir. 2002); *Crady v. Liberty Nat. Bank & Tr. Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993).

As discussed above in the context of Clark's FMLA claim, Clark sufficiently alleges several adverse actions, including diminished material responsibilities, suspension, and being passed over for a promotion. She also alleges enough to link at least some of the actions to her age

and race. For example, Clark alleges that she was reprimanded and suspended for her secondary employment activities while her younger white co-workers were not. And her younger white co-worker was promoted while the more experienced Clark could not even apply for the position. Clark also alleges that her African-American co-workers were given lower positions for important events and overburdened with work, even when others were available. And Clark's younger white co-workers were treated more favorably with respect to work attendance issues. Therefore, Clark alleges enough to support a reasonable inference that she was subjected to an adverse employment action due to her race and age. *See Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 954–55 (N.D. Ill. 2013) (holding that plaintiff sufficiently pleaded her Title VII claims by alleging that her co-workers who were not Hispanic were treated more favorably).

## IV. Failure to Accommodate and Disparate Treatment Claims under the ADA (Count III)

Clark also brings claims under the ADA, which was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). There are two types of disability discrimination claims under the ADA: failure to accommodate and disparate treatment. *See Wright v. Ill. Dep't of Corr.*, 204 F.3d 727, 730 (7th Cir. 2000). The Court examines Clark's failure to accommodate claim first.

Under the ADA, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability," unless the employer can demonstrate that to do so would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation may include "job restructuring, part-time or modified work schedules, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). The ADA imposes on an employee the initial duty to inform an

employer of a disability. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005). Thus, an employer violates the ADA only if it fails to provide reasonable accommodations for the known physical or mental limitation of the qualified individual with a disability. *Id.* This limitation is based on a common-sense notion that an employee should not be able keep her disability secret and then sue later for failure to accommodate it. *Id.*

SMG argues that Clark does not allege what accommodation she requested or even that she informed SMG of either her disability or the need for an accommodation. However, Clark alleges that in June 2015, she took her first FMLA leave due to her own personal health condition, panic attacks, depression, and anxiety. So it is reasonable to infer that SMG knew about her disability around that time. Shortly before taking her leave, Clark tried to talk to her manager regarding her workload-related stress and even made suggestions as to how to help her, but nothing was done. Upon her return from leave, Clark continued to experience health issues and tried to get approval for intermittent FMLA leave. SMG management knew about it; but she was not given any leeway in her work schedule and instead was verbally warned about her absenteeism and tardiness. The situation with Clark's overwhelming workload was also not addressed, as SMG management kept assigning significantly more events to Clark than to her co-workers. And even after Clark took her second FMLA leave, she was assigned overlapping, back-to-back, and holiday events that other event managers were available to handle. In contrast to Clark's treatment, when her co-workers felt overwhelmed, SMG management reassigned their events. Hence, Clark alleges enough for a reasonable inference that SMG knew about her disability and she requested an accommodation in the form of a more evenly-distributed workload and some leeway in her schedule, but SMG nonetheless failed to engage in a discussion with her or provide accommodations. Therefore, Clark's failure to accommodate claim survives.

While Clark pleads her ADA claim in a single count, it appears that she asserts not only a failure to accommodate theory but also a disparate treatment theory. The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). For a disparate treatment claim, a plaintiff must allege that she was disabled within the meaning of the ADA, was qualified to perform her job, and suffered an adverse employment action because of her disability. *See Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014); *see also Gebre v. PIL II, L.P.*, No. 17 C 9345, 2018 WL 3831521, at *4 (N.D. Ill. Aug. 13, 2018).

SMG argues that Clark's disparate treatment claim must be dismissed because she does not sufficiently allege an adverse employment action and causal link between her disability and that action. But, as discussed above in the context of her other claims, Clark sufficiently alleges multiple adverse employment actions. And she also links those actions to her disability by alleging that before going for her FMLA leave, she discussed her stress and workload situation with SMG management; yet management refused to help, started to treat Clark worse upon her return from the leave, and kept reassigning more work to her even when others were available. This is sufficient. Clark's disparate treatment claim under the ADA survives.

### V.     Clark's Motion to Amend Complaint

In her motion, Clark asks this Court for leave to file a second amended complaint to add allegations of additional incidents of discrimination and retaliation that happened since the filing of her prior complaint. Under Federal Rule of Civil Procedure 15(a)(2), courts should freely give leave to amend a complaint "when justice so requires." While leave to file a second amended complaint should be granted liberally, a court may deny leave for reasons including undue delay,

bad faith, dilatory motive, undue prejudice to the opposing party, or futility of amendment. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

SMG contends that amendment would be futile and would prejudice SMG because it would have to file another motion to dismiss to argue that Clark failed to allege an adverse employment action even with the new allegations added. But, as explained above, Clark has sufficiently alleged adverse employment actions in her present complaint. Thus, this Court does not anticipate that Clark's new complaint, with even more allegations, would be deficient in that regard or that SMG would have to file another motion to dismiss to address that issue. And, in any case, leave to amend is warranted by the dismissal without prejudice of Clark's retaliation claims in Counts V, VI, and VII. To prevent additional rounds of briefing on a motion to dismiss, Clark will be permitted to amend her complaint one final time both to address those issues and to add allegations regarding SMG's conduct after her last complaint was filed. As Clark no longer works for SMG and now has the benefit of this Court's opinion regarding her prior complaint, the Court does not expect any further requests for leave to amend.

## CONCLUSION

For the reasons stated above, SMG's motion to dismiss (Dkt. No. 19) is granted in part and denied in part. Clark's retaliation claim under the FMLA (Count I), discrimination claims under the ADEA and Title VII (Counts II and IV), and failure to accommodate and disparate treatment claims under the ADA (Count III) survive. Her retaliation claims under Title VII, the ADEA, and the ADA (Counts V–VII) are dismissed without prejudice. Clark's motion for leave to file a second amended complaint (Dkt. No. 38) is granted. She may amend her complaint to address the deficiencies with her retaliation claims and to add allegations of additional discrimination incidents that occurred since the filing of her prior complaint.

ENTERED:

Dated: September 30, 2018

Andrea R. Wood
United States District Judge